IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

QUINTAVIOUS OBIE

CRIMINAL ACTION FILE NO.

1:18-CR-007-ODE-JKL

## **ORDER AND FINAL REPORT AND RECOMMENDATION**

On January 9, 2018, a grand jury returned an indictment charging Defendant Quintavious Obie with five counts of human trafficking concerning the following alleged victims: C.C., M.A., A.V.P., A.N.P., and H.T.  [Doc. 13 at 1-3.]  For each victim, the indictment alleges that Obie "did, in and affecting interstate commerce, knowingly recruit, entice, harbor, transport, provide, obtain, maintain, and solicit by any means [victim], knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion, and any combination of such means, would be used to cause [victim] to engage in a commercial sex act, as defined in [18 U.S.C. § 1591(e)], all in violation of [18 U.S.C. § 1591(a), (b)(1).]"  [*Id.*]

Pending before the Court are Obie's Motion for a Bill of Particulars [Doc. 31]; his Motion to Compel Production of Grand Jury Testimony and Exhibits [Doc. 32]; and his Motion to Dismiss for Prosecutorial Misconduct and Request for an

Evidentiary Hearing [Doc. 34].  The government has responded to these motions, [Docs. 46, 47, 48], and Obie has filed replies in further support of his motions, [Docs. 51, 52, 53].  For the following reasons, it is **ORDERED** that Defendant's motions for a bill of particulars and to compel be **DENIED** and it is **RECOMMENDED** that the motion to dismiss be **DENIED**.

## I.     DECLARATIONS AND STATEMENTS OF ALLEGED VICTIMS

Obie supports his pending motions with declarations he has obtained from four alleged victims, M.A., A.V.P., T.C., and E.W.  "M.A." is the alleged victim identified in Count Two of the indictment, (*see* Decl. of M.A. [Doc. 34-1] ¶ 1[1]), and A.V.P. is the alleged victim identified in Count Three, (*see* Decl. of A.V.P. [Doc. 34-2] ¶ 1[2]).  The other two declarants, T.C. and E.W., are individuals who are not named as victims in the indictment, but with respect to whom Obie contends the government proffered information to the grand jury (*see* Decl. of T.C. [Doc. 34-3], Decl. of E.W. [Doc. 34-4]).

Each declarant makes the following statements in her declaration:

_____

[1] M.A.'s declaration is also docketed at entries 31-1 and 32-1.

[2] A.V.P.'s declaration is also docketed at entries 31-2 and 32-2.

- "Quintavious Obie never forced me to engage in any commercial sex act."

- "Quintavious Obie never threatened or forced to persuade me to engage in any commercial sex act."

- "Quintavious Obie never used fraud to encourage me to engage in any commercial sex act."

- "Quintavious Obie never coerced me to engage in any commercial sex act."

- "Quintavious Obie never recruited, enticed, harbored, transported, provided, obtained, maintained or solicited me to enable or facilitate me to engage in any commercial sex act."

- "I never saw or heard Quintavious Obie force, threaten force, commit fraud, or coerce any other person to engage in a commercial sex act."

(M.A. Decl. ¶¶ 3-8; A.V.P. Decl. ¶¶ 3-8; T.C. Decl. ¶¶ 2-7; E.W. Decl. ¶¶ 2-7.)

M.A. also states that she had been staying with "Obie and others" in an apartment for only two days when law enforcement came to the apartment. (M.A. Decl. ¶ 9.) She states that she did not tell law enforcement that Obie forced, threatened force, committed fraud, or coerced her to engage in a sex act, or that she

was concerned about Obie knowing her location or having her personal information.  (*Id.* ¶¶ 10, 12.)  She further states that Obie had been a positive influence in her life because he had encouraged her to stop using narcotics and to live with her family.  (*Id.* ¶¶ 13-14.)

A.V.P. states that she did not tell law enforcement that Obie forced, threatened force, committed fraud, or coerced her to engage in a commercial sex act, and that she "specifically told law enforcement that [] Obie did not do so." (A.V.P. Decl. ¶ 9.)

On reply, Obie also submitted what appears to be a mobile phone screenshot of a text message exchange between A.N.P. and an unidentified individual using Facebook.  [Doc. 51-1, Doc. 52-1, Doc. 53-1.]  The documents is not authenticated, and it is unclear when the text conversation occurred.  The conversation is also difficult to follow, so the Court reproduces the complete exchange as follows:

> **Unidentified Individual**:      Hey love. I don't know if you remember me ir not but I'm swayziis[3] best friend, we don't have any problems with you and aren't trying to bring any your way, we actually need your help. Can you plz do an affidavit so they can drop this case?

---

3 "Swayzii" is a nickname for Obie.  [*See* Doc. 38 at 11.]

4

**A.N.P.**:      Girl I don't even know how I'm involved in any of this! All I know it I got a letter about my phone being caught on a under age girl

**Unidentified Individual:**      Girl they have been watching him for years coming up with a bunch of random name they claim that you told them that was making you do whatever so we just need you to sign an affidavit stating that that isn't true

**A.N.P.**:      I never once said that & I'll definitely sign one because his name never came out of my mouth! I don't know how this is being pinned on me when all they did was find my phone on a different girl

**Unidentified Individual**:      Okay thank you so much I'll contact you with more information soon and nothing is being pinned on you I don't want you to think that they're just saying that you're one of the girls that said that he made you work for him they are others that we have to reach out to her as well

**A.N.P.**:      That's bullshit nobody made me do shit I'm a grown ass woman

[*Id.*]  Obie interprets the foregoing exchange as A.N.P. denying that she never told anyone, including law enforcement, that Obie coerced her into engaging into a commercial sex act.  [*See* Doc. 53 at 2.]

Also in his reply in support of his motion to dismiss, Obie states that H.T. has "verbally told the defense team that she was not coerced, etc., to engage in a commercial sex act."  [Doc. 51 at 2.]  This statement appears only in Obie's reply brief—it has not been provided to the Court by way of a declaration or affidavit.

5

Against this backdrop, the Court turns to the pending motions.

## II.   MOTION FOR BILL OF PARTICULARS

### A.   The Parties' Arguments

Obie requests a bill of particulars that provides information about the following:

1.   The date and alleged victim who engaged in, and the nature of, the alleged "commercial sex act";

2.   The date and contact information for the alleged "john" who paid for the "commercial sex act";

3.   The date and alleged victim and the manner in which Mr. Obie "recruit[ed], entice[d], harbor[ed], transport[ed], provide[d], obtain[ed], maintain[ed], and solicit[ed]", as charged in each count; and

4.   The date and alleged victim and the manner in which Mr. Obie engaged in "force, threats of force, fraud, and coercion" as charged in each count.

[Doc. 31 at 9.]

The government responds that the indictment is sufficient as a matter of law because it tracks the relevant statutory language and includes the essential elements of each charged offense.  [Doc. 46 at 4.]  The indictment also lists a range of dates

6

in each count and the federal district in which the alleged unlawful conduct occurred, and it identifies the specific conduct at issue and the alleged victim.  [*Id.* at 4-5.]  The government further argues that it has provided Obie with numerous items in discovery and that Obie has had opportunities to gather information through the contested detention hearings that he has "vigorously litigated."  [*Id.* at 5.]  Finally, with reference to the particular requests, the government argues that Obie is not entitled to any of this information by way of a bill of particulars.  [*Id* at 6-7.]

In reply, Obie asserts that a bill of particulars is necessary because there are at least fifty different ways in which one might violate 18 U.S.C. § 1591.  [Doc. 52 at 2.]  He contends that he needs to know specifically which commercial sex acts are at issue, how he purportedly facilitated the sex acts, and the manner in which he compelled the alleged victims.  [*Id.* 52 at 2-4.]  He asserts that this information is essential for him to be able to muster a defense at trial.  [*Id.* at 4-5.]

**B.     Analysis**

Federal Rule of Criminal Procedure 7(f) explains that:

> The court may direct the government to file a bill of particulars.  The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits.  The government may

> amend a bill of particulars subject to such conditions as
> justice requires.

Fed. R. Crim. P. 7(f). The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." *United States v. Davis*, 854 F.3d 1276, 1293 (11th Cir.) (citation omitted), *cert. denied* 138 S. Ct. 379 (2017). A bill of particulars may not be used for the purpose of obtaining detailed disclosure of the government's case or evidence in advance of trial. *See United States v. Perez*, 489 F.2d 51, 70-71 (5th Cir. 1973). "Nor is the defendant entitled to a bill of particulars with respect to information which is already available through other sources such as the indictment or discovery and inspection." *United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir. 1986), *modified on other grounds by*, 801 F.2d 378 (11th Cir. 1986).

Obie cannot show that he is entitled to a bill of particulars based on Requests No. 1 and 2, which seek the date and alleged victim who engaged in, and the nature of, the alleged commercial sex act, the contact information for each john, and date of payment. Each count of the indictment identifies the alleged victim by her initials, and, as Obie's filings make clear, he is well aware of who those individuals

8

are.  As for the dates in question, each count identifies a time period during which Obie allegedly caused the victims to engage in a commercial sex act.  Obie's demand for further detail regarding precise dates, precise sex acts, and contact information for every john is really a demand for the government's evidence, which is outside the scope of a proper bill of particulars.

Requests No. 3 and 4, which seek the specifics of how Obie allegedly "recruit[ed], entice[d], harbor[ed], transport[ed], provide[d], obtain[ed], maintain[ed], and solicit[ed]" each alleged victim and the manner in which he allegedly engaged in "force, threats of force, fraud, and coercion" are also outside the scope of a bill of particulars.  *See United States v. Robinson*, No. 1:14-cr-176-RWS, 2014 WL 6667018, at *8 (N.D. Ga. Nov. 24, 2014) (denying motion for bill of particulars seeking explanation of how defendant used "force, threats of force, coercion, and fraud to induce alleged acts of prostitution," reasoning that the government is entitled to allege multiple means of committing an offense and that details concerning how the government believed he did so was "tantamount to a demand for the [g]overnment's evidence"); *see also United States v. Black*, No. 1:15CR9-MW/GRJ, 2015 WL 13427809, at *1 (N.D. Fla. Oct. 16, 2015) (denying motion for bill of particulars in which defendant requested the government to specify which of the types of actions proscribed by § 1591(a)(1) defendant

allegedly engaged in); *United States v. Lilley*, No. 2:13-CR-20290-JTF-dkv, 2015 WL 4758982, at *2-4 (W.D. Tenn. Aug. 12, 2015) (same).

Not only does the indictment advise Obie concerning the allegations against him, the government has provided Obie law enforcement reports, copies of his recorded jail calls, photographs, and copies of surveillance photographs, from which, the government maintains, Obie can glean information relevant to this case. [Doc. 46 at 5.]  Obie has also had the opportunity to hear and cross examine witnesses about the allegations in the indictment.  Indeed, the Court has reviewed the transcript of the detention hearing held on February 1, 2018 before Magistrate Judge Justin S. Anand, at which Special Agent Stuart Reagan testified and gave the following details concerning the victims in this case.

- With respect to C.C., Agent Reagan testified that C.C. reportedly worked as a prostitute for Obie and then as a dancer at an exotic club. [Doc. 38 at 6.]  C.C. told law enforcement that all proceeds that she made, whether through prostitution or dancing, were paid to Obie. [*Id.*]  She reported that, Obie punished her for not collecting money from a "date" by placing her in a bathtub filled with cold water and ice, and, another occasion, hit her in the face.  [*Id.* at 7.]

10

- With respect to M.A., Agent Reagan testified that she reported that she had been forced into commercial sexual exploitation as a minor and that she had started working for Obie when she was 15 years old. [Doc. 38 at 8.]  In 2015, she reported to DeKalb County, Georgia, police that "she had been involved with Mr. Obie for several years, had been forced to work prostitution for him, and all money derived from that she was required to give Mr. Obie."  [*Id.*]  Agent Reagan also testified that he encountered M.A. in December 2017 in Obie's apartment and that she was in a "highly agitated state" and appeared to be under the influence of controlled substances.  [*Id.*]

- Regarding A.V.P., Agent Reagan stated that "she had also been forced into prostitution, commercial sexual exploitation, by Mr. Obie and that she regularly had to deliver proceeds from that to Mr. Obie or to one of Mr. Obie's associates."  [Doc. 38 at 9.]  She also reported that Obie told her that he would "get his money from her and if he had to come over to where she lived to get it he would," which she understood to mean that he would use force against her to take the money, as he always carried a handgun.  [*Id.*]

11

- Agent Reagan testified that A.N.P. reported that she worked as a prostitute for Obie and a dancer at an exotic club in Atlanta. [Doc. 38 at 10.] She told law enforcement that Obie provided narcotics to her and she became addicted. [*Id.*] She also stated that Obie "sold" her to another pimp, whom she identified as Zaccheus Obie, a relative of Obie. [*Id.* at 10-11.]

- Finally, as to H.T., Agent Reagan testified that he encountered her on the day that Obie was arrested at his residence. [Doc. 38 at 13.] She reported that she worked as a prostitute for Obie and that he had hit her "on occasions." [*Id.*] Later, in a follow-up interview, H.T. gave additional information about how long she had been working for Obie, how much money she had made for him as a prostitute, and how she had been assaulted by Obie. [*Id.*]

In sum, the Court is satisfied that the government has provided sufficient information to enable Obie to understand the government's theory of the case against him. Additional detail is not warranted under Rule 7(f), and is not necessary for him to prepare his defenses, minimize surprise at trial, or enable him to plead double jeopardy if later prosecuted for the same offense. Accordingly, Defendant's Motion for Bill of Particulars [Doc. 31] is **DENIED**.

### III.   MOTION TO COMPEL GRAND JURY TRANSCRIPTS

Obie moves to compel the government to produce all transcripts of grand jury testimony and other evidence presented to the grand jury in this case.  [Doc. 32.]  He contends this information is needed to perfect his motion to dismiss the indictment for presentation of false testimony and evidence, and because the information is material to his defense at trial.  [*Id.* at 1.]  In support of his motion, he relies on the declarations of M.A. and A.V.P. stating that they did not tell law enforcement that Obie forced, threatened force, committed fraud, or coerced them to engage in a sex act, as well A.V.P.'s declaration that she specifically told law enforcement that Obie did not do so.   [*Id.* at 2.]   Obie also relies on the unauthenticated text message exchange involving A.N.P., in which she appears to deny ever telling law enforcement about Obie.  [Doc. 53 at 2.]  Obie argues that the government must have presented false testimony to the grand jury in order to secure the indictment against him, or otherwise gave the jury incorrect instructions as to the elements of offenses.  [Doc. 32 at 1.]  This argument, he maintains, is the basis for his motion to dismiss, and he claims he cannot litigate the motion to dismiss without the grand jury materials.  [*Id.* at 2, 8-9; *see also* Doc. 53.]

Obie also argues that he is entitled to grand jury materials as Rule 16 discovery.  [Doc. 32 at 3, 8-9.]  Furthermore, he contends, he is entitled to them as

13

*Brady*[4] material because they may be exculpatory or have impeachment value.  [*Id.* at 3-9.]  He argues that the materials are material to his defense under *Brady* because they will be used to cross-examine and discredit grand jury witnesses.  [*Id.* at 9.]

Here, although Obie relies on Rule 16 in arguing that he is entitled to the grand jury materials as discovery, his request is more properly made under Federal Rule of Criminal Procedure 6(e).  *See* Fed. R. Crim. P. 6(e); *see also* Fed. R. Crim. P. 16(a)(3) ("This rule does not apply to the discovery or inspection of a grand jury's record proceedings, except as provided in Rules 6, 12(h), 16(a)(1), and 26.2."); *United States v. Jordan*, 316 F.3d 1215, 1251 (11th Cir. 2003) (noting that grand jury transcripts are not subject to Rule 16 discovery).  Federal Rule of Criminal Procedure 6(e) codifies the traditional rule of grand jury secrecy.  *United States v. Aisenberg*, 358 F.3d 1327, 1346-47 (11th Cir. 2004); *see also Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218-19 (1979) (discussing why "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings").  In limited circumstances, however, the Court may order disclosure

---

[4] *Brady v. Maryland*, 373 U.S. 83 (1963).

14

of grand jury materials under that rule.  Fed. R. Crim. P. 6(e)(3); *Aisenberg*, 358 F.3d at 1347-48.

The Court may order disclosure of grand jury materials, *inter alia*, preliminary to or in connection with a judicial proceeding, or at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury.  Fed. R. Crim. P. 6(e)(3)(E)(i)-(ii).  Disclosure is authorized only where the party seeking disclosure shows a "particularized need" for the material."  *Aisenberg*, 358 F.3d at 1348; *see also United States v. Abusaid*, 256 F. App'x 289, 290 (11th Cir 2007).  A party seeking disclosure must show (1) that the material sought is needed to avoid a possible injustice in another judicial proceeding, (2) that the need for disclosure is greater than the need for continued secrecy, and (3) that the request is structured to cover only material so needed.  *United States v. Williams*, 180 F. App'x 108, 109 (11th Cir. 2006) (citing *Douglas Oil*, 441 U.S. at 222).  A blanket request for all grand jury materials does not satisfy the "particularized need" requirement.  *Aisenberg*, 358 F.3d at 1348-49 (explaining that "particularized need" may be shown by circumstances creating difficulties "peculiar to this case, which could be alleviated by access to *specific* grand jury materials, without doing disproportionate harm to the salutary purpose of secrecy embodied in the grand jury process").  Grand jury

15

testimony cannot be released to satisfy an unsupported hope of revelation of useful information. *United States v. Valencia-Trujillo*, 462 F. App'x 894, 898 (11th Cir. 2012); *United States v. Elliott*, 849 F.2d 554, 557 (11th Cir. 1988) ("Particularized need is not shown by a general allegation that grand jury materials are necessary for the preparation of a motion to dismiss.").

Here, Obie has not shown a "particularized need" for grand jury materials in order to litigate his motion to dismiss. He has made a blanket request for all grand jury materials, which cannot satisfy the "particularized need" requirement. *Aisenberg*, 358 F.3d at 1348-49. His request is in no way tailored to the issues in his motion to dismiss. *See Williams*, 180 F. App'x at 109. The overbreadth of his request is particularly telling because Obie has presented affidavits from two alleged victims but nevertheless requests the entirety of the grand jury record, rather than records related to those two victims. Obie merely hopes that some aspect of the grand jury testimony would be helpful in arguing the motion to dismiss, but the conclusory affidavits on which he relies—which only concern some of the offenses alleged in the indictment—do not entitle him to sift through the entire grand jury record. *See Valencia-Trujillo*, 462 F. App'x at 898. Because Obie has failed to show a "particularized need" for the grand jury materials, the Court will not authorize disclosure of those materials under Rule 6(e)(3).

Obie also argues that he needs grand jury transcripts to cross-examine grand jury witnesses if they testify at trial.  If a witness who testified before the grand jury also testifies at trial, the government will produce that witness's grand jury testimony as required by the Jencks Act.[5]  But Obie is not entitled to a government witness's grand jury testimony until he or she testifies on direct.  *See Jordan,* 316 F.3d at 1227 n.17; *United States v. Jones,* No. 1:05-CR-617-WSD, 2007 WL 2071267, at *14 (N.D. Ga. July 19, 2007) ("The Jencks Act materials . . . are not subject to disclosure until the government witness testifies at trial on direct examination, or earlier if the government agrees."), *adopted at id. at* *3-4.

Further, Obie cannot show that he is generally entitled to grand jury materials under *Brady* simply because the grand jury proceedings may be helpful in preparing his defense.  *Brady* requires the government to turn over to the defendant ***favorable***

_____

[5] The Jencks Act provides in relevant part as follows:

> ***After a witness called by the United States has testified on direct examination***, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the ***witness has testified***. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

18 U.S.C. § 3500(b) (emphasis added).

17

evidence that is material.  *Jordan*, 316 F.3d at 1251.  In the *Brady* context, the "touchstone of materiality is a 'reasonable probability'" that the evidence would change the outcome of the trial.  *See Kyles v. Whitley*, 514 U.S. 419, 434 (1995). Here, Obie makes no convincing argument that the grand jury testimony was favorable to him.  To the extent that the grand jury testimony may contradict testimony that will be offered at trial or otherwise constitutes impeachment evidence, the government has represented that it understands its *Brady* obligations and will turn over such evidence in time to permit Obie to use it effectively in cross-examining the witness.  *See Jordan*, 316 F.3d at 1253.

For the foregoing reasons, the motion to compel [Doc. 32] is **DENIED**.

## IV.   MOTION TO DISMISS

Obie moves to dismiss the indictment on the grounds that the government presented false evidence to the grand jury to obtain the indictment in this case. [Doc. 34.]  To support this contention, Obie relies on the conclusory denials of alleged victims M.A. and A.V.P. and witnesses T.C. and E.W. that he engaged in the elements of the charged sex trafficking offenses.  Obie additionally requests an evidentiary hearing "to explore the evidence of misconduct . . . and determine whether the Government has engaged in any additional misconduct." [*Id.* at 7.] He asserts that the government purportedly persuaded "alleged victims and potential

18

witnesses to not testify or provide information favorable to Mr. Obie."  [*Id.* at 9.]

By way of example, Obie contends that "when witnesses have expressed reluctance

to even speak with law enforcement, law enforcement has harassed, repeatedly

contacted, and tells the person that Mr. Obie is guilty and is going to jail for 25

years."  Obie maintains that, in doing so, the government has attempted to influence

witnesses and dissuade them from providing testimony favorable to Obie's defense.

He also asserts that the government has "buried clearly exculpatory evidence" by

not notifying defense counsel that A.V.P. specifically told law enforcement that

Obie did not "threaten, coerce, force, etc., her to engage in a commercial sex act."

[*Id.*]

The government responds that Obie's motion should be denied because he

has not come forward with proof that the government engaged in misconduct with

respect to the grand jury process.  [Doc. 48 at 2-5.]  As for Obie's assertion that the

law enforcement harassed and attempted to influence witnesses, the government

responds that Obie's assertion is not supported by any evidence.  [*Id.* at 5.]  Finally,

with respect to Obie's assertion that the government has not provided *Brady*

material, the government points out that inconsistent statements do not

automatically become *Brady* material and, in any event, the government is under

no obligation to present exculpatory evidence to the grand jury.  [*Id.* at 4.]

19

In reply, Obie reiterates his contention the only possible explanation for why he was indicted was because the government presented false testimony and evidence to the grand jury. [Doc. 51 at 1-2.] Obie also cites the unauthenticated text message exchange involving A.N.P. and H.T.'s purported statement to the "defense team" that she was not coerced to engage in a commercial sex act. [*Id.* at 2.] Obie additionally argues that the government does not understand its *Brady* obligations. [*Id.* at 3.]

A court may not dismiss an indictment, even for prosecutorial misconduct, without a showing "'that the violation substantially influenced the grand jury's decision to indict.'" *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (quoting *United States v. Mechanik*, 475 U.S. 66, 78 (1986) (O'Connor, J., concurring)). Obie has not met that burden. None of the declarations that he submitted in support of his motion speak to any of the grand jury proceedings in this case. There is no indication that any of those witnesses testified before the grand jury, and with the exception of A.V.P., there is no detail concerning what any other witness reported, or did not report, to law enforcement. As for A.V.P.'s contention that she "specifically told law enforcement that Quintavious Obie did not "force[], threaten[] force, commit[] fraud, or coerc[e] [her] to engage in a commercial sex act," that assertion is too conclusory to suggest that the government

20

introduced perjured testimony or false evidence to the grand jury. "[T]o establish prosecutorial misconduct for the use of false testimony, a defendant must show that the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." *United States v. Cavallo*, 790 F.3d 1202, 1219 (11th Cir. 2015). In her affidavit, A.V.P. provides no details concerning her purported statements to law enforcement, such as what she actually said to law enforcement, to whom she spoke, the circumstances in which she spoke with law enforcement, or when spoke with law enforcement. A.V.P.'s bare-boned declaration does not give rise to a plausible inference that the government knowingly presented false evidence to the grand jury. Accordingly, A.V.P.'s declaration does not warrant dismissal of the indictment, much less unfettered access to discovery of the grand jury's proceedings.

But, assuming *arguendo* that the government was aware that A.V.P. denied that Obie had forced her to engage in a commercial sex act against her will, it does not follow that, as Obie maintains, "[t]here simply [was] no possible way the Government could have obtained an indictment against Mr. Obie without presenting false testimony or evidence to the grand jury." [Doc. 34 at 6.] A.V.P.'s denial that Obie forced her to engage in a commercial sex act does not negate the

elements of any charged offense.  The indictment alleges that Obie "recruit[ed], entice[d], harbor[ed], transport[ed], provide[d], obtain[ed], maintain[ed], and solicit[ed]" each alleged victim "knowing and in reckless disregard for the fact that means of force, threats of force, fraud, and coercion, any combination of such means, would be used to cause [her] to engage in a commercial sex act." [Doc. 13.]  The government did not necessarily present evidence to the grand jury that Obie personally forced, threatened force, committed fraud, or coerced A.V.P. to engage in a commercial sex act.

It is also a fallacy to presume, as Obie does, that all evidence contrary to A.V.P.'s declaration was necessarily false, let alone that that the government knew that the evidence was false.  At most, there is a conflict in the evidence, and Obie points to no authority to suggest that a defendant can obtain unfettered access to grand jury proceedings just because arguably contrary evidence might have existed.[6]

---

[6] A.N.P.'s purported exchange attached to Obie's reply and H.T.'s statement to the defense team do not warrant dismissal, much less an evidentiary hearing, as that evidence is not properly before the Court.  The text exchange has not been authenticated, and neither A.N.P. nor H.T. have submitted sworn statements that explain with specificity what they said or refrained from saying to law enforcement.

Obie also asserts that "it is highly probable that the Government misled the grand jury by failing to tell the grand jury that A.V.P. specifically said that Mr. Obie did not engage in the charged conduct." [Doc. 34 at 6.]  In other words, he asserts that the government engaged in misconduct by failing to divulge exculpatory information to the grand jury.  It is well-settled, however, "that the prosecution is not required to include exculpatory evidence in its presentation to the grand jury."  *United States v. Gilbert*, 198 F.3d 1293, 1304 (11th Cir. 1999) (citing *United States v. Williams*, 504 U.S. 36 (1992)); *see also United States v. Waldon*, 363 F.3d 1103, 1109 (11th Cir. 2004) ("The government is under no duty to bring exculpatory evidence to the grand jury's attention.").  The government's obligation to disclose exculpatory evidence under *Brady* "applies only in regard to trials," and, therefore, "there is no *Brady* violation except where there is a reasonable probability that non-disclosure would change the result of the trial." *Gilbert*, 198 F.3d at 1304.  Accordingly, even if the government failed to disclose A.V.P.'s purported denial to law enforcement to the grand jury, the district court may not dismiss an indictment on the basis.

Obie's remaining assertion that law enforcement purportedly harassed or attempted to coerce witnesses is completely unsubstantiated.  Accordingly, those

accusations do not justify dismissal of the indictment, let alone an evidentiary hearing.

For these reasons, it is **RECOMMENDED** that Obie's motion to dismiss be **DENIED**.

## V.    CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendant's motions for a bill of particulars [Doc. 31] and to compel [Doc. 32] be **DENIED** and it is **RECOMMENDED** that the motion to dismiss [Doc. 34] be **DENIED.**

There are no matters pending for Obie before the undersigned, and I have not been advised of any impediments to the scheduling of a trial.  Accordingly, this matter as to this defendant is **CERTIFIED READY FOR TRIAL.**

**IT IS SO ORDERED** and **RECOMMENDED** this 14th day of June, 2018.

_____
JOHN K. LARKINS III
United States Magistrate Judge