**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| QUANTAVIOUS OBIE, | : | MOTION TO VACATE |
| Movant, | : | 28 U.S.C. §2255 |
| | : | |
| v. | : | CRIMINAL NO. |
| | : | 1:18-CR-0007-WMR-JKL |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | CIVIL ACTION NO. |
| | : | 1:22-CV-106-WMR-JKL |

## ORDER AND FINAL REPORT AND RECOMMENDATION

Movant Quantavious Obie has filed the instant *pro se* motion to vacate and a supplemental motion to vacate pursuant to 28 U.S.C. §2255.  (Docs. 276, 281).  Movant seeks to challenge the constitutionality of his convictions and sentences following his guilty plea in the Northern District of Georgia.

## I.    RELEVANT PROCEDURAL AND FACTUAL HISTORY

A federal grand jury in the Northern District of Georgia indicted Movant on January 9, 2018, with five counts of sex trafficking - each count naming a different victim – in violation of 18 U.S.C. §1591.  (Doc. 13).  On February 15, 2018, the Government filed a motion for an evidentiary hearing regarding Movant's conduct while incarcerated – that is, the Government indicated it had received reports that victims were being harassed by people on behalf of Movant urging them not to testify against him or cooperate with the Government.  (Doc. 29).  The Government

asked that the Court order Movant not to contact victims or witnesses, directly or indirectly, while detained pending trial.  (*Id.*).

A Magistrate Judge held an evidentiary hearing on the Government's motion on April 16, 2018 and continuing on June 5, 2018.  (Docs. 39, 49).  On April 19, 2018, the Government filed a supplemental brief summarizing the content of Movant's recorded calls that were presented at the hearing.  (Doc. 41).  On June 5, 2018, the Magistrate Judge removed Movant's telephone privileges except for calls with legal counsel and pre-approved close family members.  (Doc. 50).

In the meantime, on March 23, 2018, Movant's counsel filed several pretrial motions, including a bill of particulars, a motion to compel production of grand jury testimony, a motion for reconsideration of bond, a motion to dismiss the indictment, and a motion for additional law library time.   (Docs. 31-35).  I issued a report and recommendation ("R&R") on June 14, 2018, recommended that those pretrial motions be denied, and certified the case ready for trial.  (Doc. 54).  The District Judge adopted my R&R over Movant's objections and set the trial for September 10, 2018.  (Docs. 56, 57).  Manubir Arora entered a notice of appearance on July 16, 2018, and joined Richard Rice, who had represented Movant since before the grand jury entered the indictment.  (Doc. 62).

On August 21, 2018, a grand jury entered a superseding indictment charging Movant with four counts of sex trafficking, and, based on the recorded calls, one

count for conspiracy to tamper with witnesses in violation of 18 U.S.C. §1512 and three counts of witness tampering in violation of 18 U.S.C. §1512. (Doc. 71). The grand jury also charged a co-defendant, Monique Dubose, with conspiracy to tamper with witnesses and two counts of witness tampering. (*Id.*). Movant filed a motion to sever counts and defendants on September 24, 2018. (Docs. 99, 100, 101). That same day Movant also filed a motion to suppress evidence, a motion *in limine* to exclude references to stripping as a commercial sex act, and a motion *in limine* to exclude Rule 404(b) evidence. (Docs. 104, 106, 107, 108).

Meanwhile, the trial was rescheduled for October 15, 2018, and later to October 29, 2018. (Docs. 95, 112). A grand jury entered a second superseding indictment against Movant and Dubose on October 17, 2018, which included five counts of sex trafficking, conspiracy to tamper with witnesses, and three counts of witness tampering. (Doc. 139). Based on the second superseding indictment, the Court removed the case from the trial calendar. (Doc. 150).

On October 20, 2018, the Government filed a motion to, *inter alia*, modify Movant's pretrial conditions and remove all telephone privileges after Movant violated this court's ruling that he could not contact any victims or witnesses. (Doc. 159). A Magistrate Judge held an evidentiary hearing on November 27, 2018, found that Movant violated the Court's orders, and completely removed his telephone

privileges, except for calls with defense counsel, until the conclusion of the trial. (Docs. 191, 196).

On October 20, 2018, the Government also filed a motion to disqualify Movant's counsel, Richard Rice, and filed a supplemental motion on November 13, 2018. (Docs. 146, 165). In that motion, the Government argued that at trial it expected to prove that Movant directly and "through third parties" – including Rice – attempted to obtain sworn statements from the named victims that contradicted their previous statements to law enforcement. (Doc. 165 at 2). The evidence included:

- a recorded jail call in which Movant purportedly directs Dubose and two other women to contact the five named victims in the initial indictment and convince them to sign affidavits stating that Movant did not force them to perform commercial sex acts;

- a recorded jail call in which Movant purportedly tells Dubose (i) to contact alleged victim A.V.P. and explain that Movant will not help her in connection with a pending criminal case unless she signs an affidavit and (ii) to tell A.V.P. that she was the only one not to sign an affidavit, which was untrue;

- an offer that Movant made to A.V.P. to pay her $1,000 if she would sit on his side of the courtroom during his detention hearing;

- a telephone call that Movant made to alleged victim E.W. after he learned that she was willing to speak with law enforcement in which he allegedly yelled at her and demanded that she not speak with law enforcement, after which E.W. cancelled her appointment with the case agents;

- several recorded jail calls between Movant and H.T. in which Movant (i) offered to pay H.T.'s attorney's fees and bond; (ii) "harass[ed] her directly to sign the affidavit"; and (iii) falsely stated that H.T. was the only one who did not sign an affidavit; and

- a recorded jail call in which Movant "ordered Dubose to convince H.T. to sign an affidavit."

(Doc. 165 at 2). Pertinent to the Government's motion to disqualify Mr. Rice, the Government indicated that it expected to call H.T. who would testify that on February 5, 2018, Mr. Rice went to the Cobb County Jail where H.T. was being detained in connection with state drug charges, the purpose of which ostensibly was to obtain a sworn statement from H.T. stating, essentially, that Movant did not engage in any conduct that would constitute illegal sex trafficking under federal law. (*Id.*). H.T., however, would not sign the affidavit. (*Id.*).

I held an evidentiary hearing on November 20, 2018, and heard testimony from three witnesses. (Doc. 183). Following the hearing, I found as a matter of fact that Mr. Rice met with H.T. alone on February 5, 2018, which, while the potential conflicts were troubling, did not necessarily sustain disqualification under Rules 3.7 and 4.1 of the Georgia Rules of Professional Conduct. (*Id.* at 10). I also found that although the Government would not have a compelling reason to call Mr. Rice as a witness, he nevertheless could "subtly impart to the jury" a different version of events if he and H.T. were to have different recollections of their meeting. (*Id.* at 14-15). But because, as best the Court could tell, their interaction was ancillary to

the Government's allegations of witness tampering, I found that limited disqualification was appropriate as opposed to the harsh remedy of total disqualification. (*Id.* at 14-15).

As a result, I ordered that, if H.T. or any other witness were to testify about what occurred during Mr. Rice's meeting with H.T., any such examination must be conducted by Mr. Arora or other counsel of Movant's choice. (*Id.* at 15-16). That same day Movant signed a waiver in which Movant acknowledged that Mr. Arora, his separate and independent attorney, discussed with him the potential conflict between Movant and Mr. Rice as well as the advisability of Rice's continued representation, and that he had sufficient time to consider the matter and knowingly and voluntarily consented to the continued representation. (Doc. 186).

Mr. Rice filed a motion to withdraw as Plaintiff's counsel on November 26, 2018. (Doc. 187). Following a hearing, the District Judge granted Rice's motion and rescheduled the trial for January 7, 2019. (Doc. 190). Mr. Arora filed proposed *voir dire* questions on December 21, 2018. (Doc. 208).

A.    **The Plea Proceedings**

1.    January 4, 2019

Movant subsequently indicated that he wanted to enter a guilty plea, and the Court scheduled a hearing on January 4, 2019.  (Doc. 213).  During the hearing, the parties notified the Court that, pursuant to a negotiated plea agreement, Movant had agreed to enter a plea to Counts One (sex trafficking related to C.C.), Five (sex trafficking related to H.T.), and Seven (conspiracy to tamper with witnesses), and the Government would dismiss the remaining charges.  (Docs. 214-1, 262).  During the plea colloquy, Movant indicated that:  he had carefully reviewed the plea agreement with his attorney, understood the terms and conditions contained therein, agreed to them, and signed the agreement; he understood the rights he was giving up if he entered the plea and the maximum sentence he could face; he understood the charges against him; and the Government had not promised him anything to enter a guilty plea other than what was in the plea agreement.  (Doc. 262 at 1-11).  The Government recited the relevant portions of the plea agreement for the record, and recited the factual basis, which also was set forth in Paragraph 12 of the signed plea agreement.  (*Id.* at 13-22; Doc. 214-1 at 7-11).  The Court interrupted that recitation several times to ask questions, especially as it pertained to the fraud element of the sex trafficking charge.  (Doc. 262 at 15-21).

After the Court acknowledged that it would be somewhat repetitious, the Court instructed the Government to state what the Government would prove at trial. (*Id.* at 24-25). After the Government outlined what the evidence would show as to each count, the Court would stop and ask Mr. Arora and Movant if they agreed with the Government's statement. (*Id.* at 26-29). As to Counts One and Five, Movant agreed with the Government's statement of facts. (*Id.* at 26-28). But after the Court asked the same question as to Count Seven, Movant indicated that he needed time to speak with his attorney. (*Id.* at 29). The Court took a brief recess, and upon reconvening Mr. Arora told the Court that Movant did not wish to proceed with the plea. (*Id.* at 30). Specifically, Movant did not believe that his actions constituted fraud or coercion as required by the sex trafficking statute. (*Id.*).

The Court noted for the record that in as much as it may assist Movant, it was persuaded by the Government's argument that Movant's actions met the fraud and coercion element of the statute. (*Id.* at 30-31). At that point Mr. Arora represented to the Court that Movant had previously hesitated regarding that element, that Mr. Arora and the Government had worked out the factual basis of the plea agreement which they thought had satisfied Movant's concerns, and that the Government possessed even more evidence than that which was stated in the plea and during the colloquy. (*Id.* at 32). But Movant still did not want to proceed with the plea, and the Court recessed until the January 7, 2019, scheduled jury trial. (*Id.* at 33-34).

8

2.    <u>January 7, 2019</u>[1]

On the morning of January 7, 2019, Mr. Arora advised the Court that he and Movant had a "lengthy consultation" over the weekend and that Movant had agreed to follow through with the guilty plea. (Doc. 262 at 35). The Court asked Movant if he wanted to enter a guilty plea, to which he answered that he did. (*Id.*). Because the Court had already conducted a "pretty extensive plea colloquy," and had covered almost everything on January 4 before Movant had changed his mind about entering a plea – including the factual basis for Counts One and Five – the Court indicated that it would simply continue with the process. (*Id.* at 36).

But the Court asked the Government to again recite the factual basis for all three counts, which the Government read verbatim from Paragraph 12 of the plea agreement.[2] (*Id.* at 37-38). After each count the Court asked Movant if he agreed with what the Government's evidence would show, and each time Movant said that he did. (*Id.* at 39-43). Movant stated that: he wanted to enter a guilty plea; he was entering into the plea freely and voluntarily; he was not under the influence of liquor or drugs; and the Government had not promised him anything other than what was in the plea agreement. (*Id.* at 43-44). And finally, the parties agreed that the

---

[1]    The transcripts of both plea hearings are contained together in Docket No. 262.

[2]    The plea agreement was the same, other than the fact that the date had been changed.

previous hearing and the current hearing together provided a complete record.  (*Id.* at 44).

## B.     Post-Plea Proceedings

On March 12, 2019, Movant filed a *pro se* motion to withdraw his plea, arguing that he was pressured into the plea by defense counsel.  (Doc. 221).  The Court denied the *pro se* motion on March 11, 2019, and denied Movant's subsequent *pro se* motion for reconsideration [Doc. 230] on April 25, 2019.  (Docs. 222, 231). On April 25, 2019, the Court sentenced Movant to 260 months of imprisonment to be followed by ten years of supervised release.  (Doc. 233).

Movant filed a notice of appeal on May 10, 2019.  (Doc. 238).  Thereafter, Movant was appointed new counsel for appeal.  (Doc. 255).  He raised one issue: that the Court abused its discretion by denying him an evidentiary hearing to consider his *pro se* motion to withdraw the guilty plea – which he claimed, as he does here, that his attorneys pressured him to accept.  *United States v. Obie*, 817 F. App'x 934, 934 (11th Cir. 2020).

The Eleventh Circuit found that the Court

conducted an extensive Rule 11 inquiry, during which it confirmed that Obie committed the crimes alleged, was not under any influence, and knew he was sacrificing certain rights.  To be sure, Obie generally alleges that his attorney 'pressured him' to accept the plea.  But these allegations are vague, and in any event, the district court made sufficient Rule 11 inquiries after the points in which Obie claims that he was pressured.  As a result, the court did not abuse its discretion in denying withdrawal, . . . or in denying a hearing.

*Id.* (citations omitted).  As a result, because "the judge's extensive Rule 11 inquiries assured the voluntariness of the plea[,]" the Eleventh Circuit affirmed Movant's convictions and sentences.  *Id.* at 935.

Movant executed a §2255 motion on December 30, 2021.  (Doc. 276).  He later filed a motion to amend the §2255 motion and a request for an extension of time.  (Doc. 279).  After the Court instructed him to clarify whether he sought an extension of time to file an amended §2255 motion or a reply, Movant filed a motion to clarify intent [Doc. 281], in which he indicated that he wanted to file a supplemental §2255 motion and add six more claims.  The motions [Docs. 279, 281] are **GRANTED** *nunc pro tunc*, and the Court will discuss the claims Movant raises therein.

To that end, Movant raises the following claims, all of which he argues rendered his plea involuntary:[3]

(1)    he received ineffective assistance of counsel because counsel:

   (a)    refused to review any evidence with Movant so he could reach a knowing, intelligent, and voluntary decision whether to proceed to trial or plead guilty;

   (b)    ignored Movant's assertion of innocence on some of the counts to which counsel urged him to plead guilty;

---

[3]    The issues for relief are taken from Movant's original motion to vacate [Doc. 276] and his "motion to clarify intent" in which he sought to add six additional grounds [Doc. 281].  The Government did not respond to the additional six grounds.

11

      (c)    "pressured" Movant to plead guilty with threats that if he proceeded to trial a certain life sentence would be the outcome;

      (d)    used the temporal urgency of a looming deadline, in combination with their consistent refusal to prepare for trial and threats of a certain life sentence resulting from trial to coerce Movant into a fifteen to twenty-five year plea deal;

(2)    the plea lacked a sufficient factual basis;

(3)    the Government engaged in misconduct;

(4)    his waiver of Mr. Rice's conflict was improper;

(5)    Mr. Arora created a conflict of interest himself by putting Mr. Rice's interests above Movant's; and

(6)    his conviction violates *ex post facto* laws.

(Docs. 276, 281).  For the following reasons, I **RECOMMEND** that the instant §2255 motion be **DENIED**.

## II.  DISCUSSION

### A.  Standard of Review

Congress enacted §2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences. *United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990).  Pursuant to §2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction

12

to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." *Id.* (citations omitted); *see generally United States v. Hayman*, 342 U.S. 205 (1952).

"[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Movant must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

The Court should order an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." As discussed below, Movant's §2255 motion and the record in this case conclusively show that he is not entitled to relief in connection with his claims. Thus, no evidentiary hearing is required.

**B.** **Analysis**

1.   Movant's Claims are Foreclosed.

Movant raises four claims of ineffective assistance of counsel related to his plea, two claims of conflicts of interest of both counsel, one claim that there was not a sufficient factual basis for his plea, one claim of prosecutorial misconduct, and an *ex post facto* claim. The gist of all of these claims, however, is that Movant's plea was not entered into knowingly or voluntarily. Movant raised one issue on appeal:

13

that the Court abused its discretion when it denied his motion to withdraw the guilty plea – which, according to Movant, counsel pressured him into – without a hearing. *Obie*, 817 F. App'x at 934.  The Eleventh Circuit found that the Court did not abuse its discretion either by denying the motion to withdraw or by doing so without conducting a hearing, because the Court's extensive Rule 11 colloquy assured the voluntariness of Movant's plea.  *Id.*

Matters decided on direct appeal cannot be re-litigated in a §2255 motion. *Hidalgo v. United States*, 138 F. App'x 290, 291 (11th Cir. 2005) (per curiam).  And matters that could have been raised on direct appeal, but were not, are generally foreclosed.  *Id.*; *see also Lynn v. United States*, 365 F.3d 1225, 1233-35 (11th Cir. 2004).  Ineffective assistance of counsel claims, however, are exceptions to this rule because those claims cannot be fully litigated on direct appeal and collateral review allows for adequate development and presentation of relevant facts in connection therewith.  *Massaro v. United States*, 538 U.S. 500, 505-09 (2003).  But here, all of Movant's claims – including those for ineffective assistance of counsel – are foreclosed.

As to Movant's claims other than those for ineffective assistance of counsel – *i.e.,* that there was no factual basis for the plea, counsels' conflicts of interest, prosecutorial misconduct, and that his conviction violates the *ex post facto* clause – whether I construe them as challenging the voluntary nature of the plea or as new

claims, he cannot litigate those claims here.  *See Hildalgo*, 138 F. App'x at 291;

*Lynn*, 365 F.3d at 1233-35.   Indeed, "even if the arguments are different," a

defendant "cannot repackage the same facts as a different argument and claim that

his new, different argument could not have been raised before."  *Hidalgo*, 138 F.

App'x at 294; *see also United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000)

("A rejected claim does not merit rehearing on a different, but previously available,

legal theory."); *Felix v. United States*, No. 2:19-cv-268-FtM-38MRM, 2019 WL

4305483, at *2 (M.D. Fla. Sept. 11, 2019) ("Felix 'cannot repackage the same facts

as a different argument' because any new arguments based upon facts that previously

existed would now be procedurally barred.") (quoting *Hidalgo*, 138 F. App'x at

294).

Likewise, Movant cannot bring his ineffective assistance of counsel claims in

this proceeding because he also simply has "repackaged" the claim he raised on

appeal.  *See, e.g., Williams v. United States*, No. 2:19-cv-271-FtM-38-MRM, 2020

WL 6382026 at *4 (M.D. Fla. Oct. 23, 2020) (finding ineffective assistance of

counsel claim procedurally barred because the predicate issue was raised on appeal

and the defendant cannot "repackage" the same facts as a different argument on

collateral review); *cf. Millender v. United States*, No. 1:16cv45-MHT, 2018 WL

1555653, at *4-5 (M.D. Ala. Mar. 9, 2018) (finding claim raised on appeal that trial

court erred in denying motion to withdraw involuntary plea based on ineffective

assistance of counsel barred §2255 claim that ineffective assistance of counsel resulted in involuntary plea), *report and recommendation adopted by* 2018 WL 1546364 (M.D. Ala. Mar. 24, 2018).

2.    Movant's Claims are Barred by the Law of the Case Doctrine.

Alternatively, because the Eleventh Circuit found that Movant's plea was knowing and voluntary, the law of the case bars this Court's reconsideration of the issue. Indeed, under law of the case doctrine, "both district and appellate courts are usually bound to follow a prior appellate decision in the same case." *United States v. Spellissy*, 842 F. App'x 516, 518 (11th Cir. 2021) (per curiam); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988) ("'As most commonly defined, the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'") (citations omitted) (alteration in original). The doctrine precludes the courts from revisiting issues not just decided explicitly in the prior appeal, but also issues decided "by necessary implication." *Welch v. United States*, 958 F.3d 1093, 1098 (11th Cir. 2020); *see also United States v. Barton*, 834 F. App'x 529, 530 (11th Cir. 2020) ("Under the [law of the case] doctrine, a decision by this Court 'binds all subsequent proceedings in the same case not only as to explicit rulings, but also as to issues decided necessarily by implication

in the prior appeal.'") (citations omitted).  And the rule of the case applies to both prior factual findings and conclusions of law.  *Barton*, 834 F. App'x at 530.

Here, Movant attempts to relitigate his claim that his attorneys pressured him into entering the plea, and raises more arguments as to why his plea was involuntary. Because the Eleventh Circuit decided these issues explicitly or necessarily by implication, this Court need not reconsider them.[4]   *See, e.g., United States v. Freeman*, No. CR-H-12-479-2, 2018 WL 2986711, at *4 (S.D. Tex. June 14, 2018) (finding Fifth Circuit decision on appeal that defendant entered voluntary plea was law of the case and barred §2255 claim challenging voluntariness of plea on different grounds); *see also Saint-Surin v. United States*, No. 13-62296-civ-MARRA, 2014 WL 12900624, at *14 (S.D. Fla. Dec. 30, 2014) (holding law of the case barred claim brought on appeal "even if under the guise of ineffective assistance of counsel"), *adopted by* 2015 WL 13830353 (S.D. Fla. Jul. 8, 2015), *aff'd*, 814 F. App'x 540 (11th Cir. 2020); *Willis v. United States*, No. CV612-089, 2013 WL 393013, at *2 n.6 (S.D. Ga. Jan. 30, 2013) (finding law of the case applied in §2255 even though the defendant raised different legal theory because he cannot "'re-appeal' th[e] result [of the issue resolved on appeal] by repackaging the same appellate argument as a §2255 claim"); *Walker v. United States*, No. 7:09-cv-90060, 2010 WL 4026123, at

---

[4]     There are three exceptions to the law of the case doctrine, none of which apply here.  *See Spellissy*, 842 F. App'x at 518 (providing the exceptions).

*3 (M.D. Ga. May 24) (finding law of the case barred claim raised on appeal repackaged as ineffective assistance of counsel claim because defendant "may not change the standard of review on a claim decided adversely to him on direct appeal and relitigate it as an ineffective assistance of counsel claim"), *adopted by* 2010 WL 4026120 (M.D. Ga. Oct. 13, 2010).

## III.   CONCLUSION

Based on the foregoing reasons, **IT IS RECOMMENDED** that Quantavious Obie's motion to vacate his sentence [Docs. 276, 281] be **DENIED WITH PREJUDICE**.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing §2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   28 U.S.C. §2253(c)(2) provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere

18

'good faith' on his or her part." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the §2255 motion. *See id.* "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325). In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Based on the foregoing discussion, reasonable jurists would not find "debatable or wrong" my determination that Movant's claims are procedurally defaulted and/or barred by the law of the case doctrine. *See Slack*, 529 U.S. at 484.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be denied.

**IT IS ORDERED** that Movant's motion for bond pending relief pursuant to §2255 [Doc. 282] is **DENIED AS MOOT**.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**SO ORDERED** this 2nd day of February, 2023.

_____
JOHN K. LARKINS III
UNITED STATES MAGISTRATE JUDGE